AO 106 (Rev. 06/09) Application for a Search Warrant

RTG for AUSA Woum

# UNITED STATES DISTRICT COURT
for the
Southern District of California

FILED
JUL 0 3 2017
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

One Nextel Cellular Telephone
Model V.45; IMEI 354044060604634

Case No. '17MJ8689

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-2 (incorporated herein)

located in the _____Southern_____ District of _____California_____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B-2 (incorporated herein)

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 841, 846, 952, 960, 963 | Importation of a Controlled Substance, Possession of a Controlled Substance with Intent to Distribute, Conspiracy to Import and Conspiracy to Possess a Controlled Substance with Intent to Distribute |

The application is based on these facts:
See Affidavit of Special Agent Roberto Rospigliosi (incorporated herein)

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature

Special Agent Roberto Rospigliosi
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 07/03/2017 @ 12:00 p.m.

_____
Judge's signature

City and state: El Centro, CA

Hon. Peter C. Lewis U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A-2

### PROPERTY/ITEMS TO BE SEARCHED

The property/items to be searched is described as:

One Nextel Cellular Telephone

Model: Nextel Model V.45
IMEI: 354044060604634
FCC ID: 2AA9WV2002

The telephone is currently stored in the Seized Property Vault and is in the possession of Homeland Security Investigations El Centro, 2051 N. Waterman Ave, El Centro, CA 92243.

## ATTACHMENT B-2
## ITEMS TO BE SEIZED

The following evidence to be searched for and seized pertains to violations of Title 21 U.S.C. Sections 952, 960, 963, 841 and 846:

1. Communications, records, or data including but not limited to emails, text messages, photographs, audio files, videos, or location data:
   a. tending to indicate efforts to deliver controlled substances from Mexico to the United States;
   b. tending to identify other facilities, storage devices, or services—such as email addresses, IP addresses, phone numbers—that may contain electronic evidence tending to indicate efforts to deliver controlled substances from Mexico to the United States;
   c. tending to identify co-conspirators, criminal associates, or others involved in smuggling controlled substances from Mexico to the United States;
   d. tending to identify travel to or presence at locations involved in the smuggling of controlled substances from Mexico to the United States, such as stash houses, load houses, or delivery points;
   e. tending to identify the user of, or persons with control over or access to, the subject phone; or
   f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data above.

## AFFIDAVIT IN SUPPORT OF APPLICATION

I, Roberto Rospigliosi, Special Agent with the United States Department of Homeland Security, Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations ("HSI"), having been duly sworn, hereby state as follows:

## INTRODUCTION

1. This affidavit is submitted in support of an application to search two cellular telephones ("Telephone #1" and "Telephone #2", respectively; together the "Target Telephones") described as follows:

> Telephone #1:
> One Nextel Cellular Telephone
> Model V.45
> IMEI 354044060604634
>
> Telephone #2:
> One Nextel Cellular Telephone
> Model V.35
> IMEI 354043061437085

more particularly described in Attachments A-1 and A-2, incorporated herein, for evidence of violations of Title 21, United States Code, Sections 952, 960, 963, 841 and 846, Importation of a Controlled Substance, Conspiracy to Import a Controlled Substance, Possession of a Controlled Substance with Intent to Distribute, and Conspiracy to Possess a Controlled Substance with Intent to Distribute. The Target Telephones were both seized from Daniel SANCHEZ-Martinez ("SANCHEZ") at the time of a vehicle viewing on June 29, 2017.

2.    Probable cause exists to believe that the Target Telephones contain evidence of a crime and property designed for use, intended for use, or used in committing a crime. Specifically, I have probable cause to believe that within the Target Telephones exists evidence relating to violations of Title 21, United States Code Sections 952 and 960, Importation of a Controlled Substance.

3.    The Target Telephones are currently in the possession of Seized Property Vault, Homeland Security Investigations El Centro, 2051 N. Waterman Ave, El Centro, CA 92243.

4.    The evidence to be searched for and seized is described in Attachment B, incorporated herein.

### EXPERIENCE AND TRAINING

5.    I am an "investigative or law enforcement officer of the United States" within the meaning of Title 18, United States Code ["U.S.C."], Section ["§"] 2510(7). As such, I am empowered to conduct investigations of, and to make arrests for, offenses numerated in Title 18, U.S.C. § 2516.

6.    I have been employed as a Special Agent with HSI since November of 2010. I am currently assigned to the ICE/HSI Office of the Assistant Special Agent in Charge, in El Centro, California. I am a graduate of the Federal Law Enforcement Training Center in Glynco, Georgia. During the training, I learned how controlled substances are manufactured, consumed, packaged, marketed, and distributed. I have interviewed and operated informants, executed search warrants,

arrested and interviewed subjects, conducted physical surveillance, and utilized electronic and video surveillance. I have also worked with and consulted numerous agents and law enforcement officers who have investigated drug trafficking. During my experience in law enforcement, I have had training in narcotics investigations. I have participated in numerous debriefings of informants who had personal knowledge regarding narcotics trafficking. Additionally, I have had training in many aspects of drug investigations including undercover operations, conducting surveillance, and arrests.

7. I am familiar with narcotics traffickers' methods of operation including the distribution, storage, and transportation of narcotics and the collection of money proceeds of narcotics trafficking and methods of money laundering used to conceal the nature of the proceeds. I have had training in investigations regarding the unlawful importation, possession, and distribution of controlled substances, as well as conspiracies associated with criminal narcotics, in violation of Title 21, United States Code, §§ 952(a), 960 and 963.

8. Through the course of my training, investigations, and conversations with other law enforcement personnel, I am aware that it is common practice for narcotics smugglers to work in concert with other individuals and to do so by utilizing cellular telephones, pagers and portable radios to maintain communications with co-conspirators in order to further their criminal activities. Conspiracies involved in the smuggling and trafficking of narcotics generate many

types of evidence including, but not limited to, cellular phone-related evidence such as voice-mail messages referring to the arrangements of travel and payment, names, photographs, text messaging, and phone numbers of co-conspirators. For example, load drivers smuggling controlled substances across the border are typically in telephonic contact with co-conspirators immediately prior to and following the crossing of the load vehicle, at which time they receive instructions on how to cross and where and when to deliver the controlled substance.

9. I am familiar with drug trafficking operations and the trafficking patterns employed by narcotics smuggling organizations, including the concealment of narcotics in vehicles and the smuggling of those vehicles into the United States. Through my investigations, I have learned that there are numerous methods utilized by Drug Trafficking Organizations to conceal narcotics in vehicles, including non-factory compartments, in natural voids of the vehicle, and within deep concealment within the inside of the engine. I have seen numerous concealment methods and am familiar with locating and identifying these concealment methods through visual inspection of vehicles.

10. I have also spoken with agents, as well as other law enforcement officers about their experiences, and the results of their investigations and interviews. I have become knowledgeable of the methods and modes of narcotics operations and the language and patterns of narcotics abuse and trafficking. I have become familiar with the methods of operation typically used by narcotics

traffickers. I know that narcotics traffickers often require the use of one or more telephone facilities to negotiate times, places, schemes and manners for importing, possessing, concealing, manufacturing, and distributing controlled substances and for arranging the disposition of proceeds from the sale of controlled substances. My experience as a Special Agent with HSI, my participation in investigations of narcotics organizations, my conversations with other agents in HSI, the Drug Enforcement Agency, Federal Bureau of Investigation, Customs and Border Protection, and other state and local law enforcement officers familiar with narcotics trafficking, and my training, form the basis of the opinions and conclusions set forth below, which I drew from the facts set forth herein. Because this affidavit is being prepared for the limited purpose of obtaining authorization for a search warrant, I have not set forth all of the facts known to me about this investigation, rather the facts I believe are necessary to establish probable cause for my request.

11. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics smuggling investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

   a. Drug smugglers will use cellular telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages.

b.  Drug smugglers will use cellular telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit.

c.  Drug smugglers and their accomplices will use cellular telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations.

d.  Drug smugglers will use cellular telephones to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo.

e.  Drug smugglers will use cellular telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of checkpoints and border crossings.

f.  Drug smugglers and their co-conspirators often use cellular telephones to communicate with load drivers who transport their narcotics and/or drug proceeds.

## PROBABLE CAUSE

12. **PRIMARY INSPECTION**: According to United States Customs and Border Protection Officers' (CBPO) reports, On June 6, 2016, at approximately 4:30 PM, SANCHEZ, a Mexican citizen, presented a valid Border Crossing Card and applied for entry into the United States (US) at the Calexico, California (CA) East Cargo Port of Entry (POE). SANCHEZ was the driver and sole occupant of a Pro Star International tractor bearing Arizona (AZ) license plate AE28472, with a trailer attached bearing AZ license plate 11133T. CBPO N. Ayala was assigned to the cargo primary lanes when she encountered SANCHEZ, the truck and the trailer. As CBPO N. Ayala took SANCHEZ's Border Crossing

Card and manifest, she noticed SANCHEZ's hands were shaking. CBPO N. Ayala received a negative oral Customs Declaration from SANCHEZ. CBPO N. Ayala stated that SANCHEZ's voice was shaky and avoided eye contact during the conversation. CBPO N. Ayala referred SANCHEZ to the x-ray machine for further inspection.

13. **Z-PORTAL X-RAY SCREENING**: While assigned as the primary operator of the x-ray machine, CBPO A. Lopez conducted a scan of the truck and trailer. After the scan was completed, CBPO A. Lopez noticed anomalies were present in between the ceiling and the roof of the trailer. CBPO A. Lopez referred the truck and the trailer to the secondary dock for inspection.

14. **SECONDARY INSPECTION:** At the secondary dock, CBPO R. Garcia inspected the trailer and noticed that the ceiling was very clean and looked like it had been recently replaced. CBPO R. Garcia requested Canine Enforcement Officer (CEO) J. Cassell to screen the inside of the trailer with her assigned Human and Narcotics Detection Dog (HNDD). During the sweep of the trailer, CEO J. Cassell's HNDD attempted to jump on the side walls of the trailer and alerted to the ceiling. CBPO R. Garcia drilled a hole through the roof of the trailer, producing a green leafy substance that field tested positive for marijuana. A search of the trailer's ceiling revealed packages wrapped in plastic between the ceiling and the roof. A total of two hundred and thirty-two (232) packages were removed from the trailer with a total weight of approximately 1127.74 kilograms (2481.03 pounds) of

7

marijuana. SANCHEZ was arrested for violation of Title 21, United States Code, 952 and 960, Importation of a Controlled Substance.

15. On June 7, 2016, at approximately 9:00 AM, I conducted a telephonic interview of the owner of the truck and trailer. The owner stated the truck has a GPS tracker installed and showed that SANCHEZ drove the truck with no trailer attached without authorization to an unknown location in Mexico for approximately 13 hours on June 5, 2016. The owner said the truck and trailer are permanently assigned to SANCHEZ while employed with the company. The owner stated that SANCHEZ was scheduled to pick up the truck and trailer from Frank's Service and Trucking parking lot, located in Mexico, on the morning of the scheduled delivery. After SANCHEZ picked up the truck and trailer, SANCHEZ was scheduled to drive straight to the packaging warehouse, which is approximately 1 mile from the parking lot located in Mexico. After the packaging warehouse, SANCHEZ was scheduled to drive to the Calexico, California East Cargo Port of Entry. Once cleared at the Port of Entry, SANCHEZ was scheduled to drive to the delivery destination in Salinas, California. After the delivery was complete, SANCHEZ was to return the truck and trailer to Mexicali, Mexico. However, based on the truck's GPS system and video recordings of the parking lot provided by the owner of the truck and trailer, SANCHEZ picked up the truck with no trailer attached the night prior to the scheduled date. At the parking lot, a guard recognized SANCHEZ as he left the parking lot driving the truck. According to

the company's GPS, SANCHEZ drove the truck to an unknown location in Mexicali, Mexico without the company's authorization. After approximately 13 hours at the unknown location, Sanchez drove the truck to the packaging warehouse. The owner provided pictures of SANCHEZ at the packaging warehouse with the truck and trailer attached.

16. After SANCHEZ's arrest, the truck and trailer have been in continuous custody of the government and stored in a secure location. No items have been added or removed from the truck and trailer since SANCHEZ's arrest. During a viewing by the defense counsel of the truck and trailer on June 29, 2017, the defense counsel's investigator located a bag of personal items, located in the truck that contained the Target Telephones. The Target Telephones were not retrieved from the truck after SANCHEZ's arrest. The Target Telephones were seized as evidence and were stored in HSI's El Centro, California evidence vault.

17. Based upon my experience and SANCHEZ's smuggling of over 1127.74 kilograms of marijuana into the United States, I believe that SANCHEZ as well as other persons as yet unknown, were involved in a conspiracy to import marijuana into the United States and distribute the marijuana within the Southern District of California and elsewhere. Further, based on my training and experience, I also believe SANCHEZ may have used the Target Telephones to coordinate with unknown co-conspirators regarding the importation and distribution of marijuana, and to otherwise further this conspiracy both inside and

outside of the United States, and the fact that SANCHEZ was in possession of the Target Telephones when he was apprehended.

18. Furthermore, based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that information relevant to the narcotics smuggling activities of SANCHEZ and their co-conspirators, such as telephone numbers, made and received calls, contact names, electronic mail (e-mail) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the Target Telephones.

19. Based upon my experience and training, and all the facts and opinions set forth in this Affidavit, there is probable cause to believe that the Target Telephones contain evidence of violations of 21 U.S.C. § 841, 846, 952 and 960, including emails, text messages, photographs, audio files, videos, or location data:

   a. tending to indicate efforts to deliver controlled substances from Mexico to the United States;

   b. tending to identify other facilities, storage devices, or services – such as e-mail addresses, IP addresses, phone numbers – that may contain electronic evidence tending to indicate efforts to deliver controlled substances from Mexico to the United States;

   c. tending to identify co-conspirators, criminal associates, or others involved in smuggling controlled substances from Mexico to the United States;

   d. tending to identify travel to or presence at locations involved in the smuggling of controlled substances from Mexico to the United States, such as stash houses, load houses, or delivery points;

 e. tending to identify the user of, or persons with control over or access to, the target phones; or

 f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data above.

## METHODOLOGY

20. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the

stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

21. Following the issuance of this warrant, I will collect the subject cellular telephones and subject them to analysis. All forensic analysis of the data contained within the telephones and their memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

22. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

## CONCLUSION

23. As a result of the facts and circumstances described above, I believe that probable cause exists to conclude that SANCHEZ used the Target Telephones to facilitate the offense of importing marijuana. The Target Telephones were likely used to facilitate the offense by transmitting and storing data, which

constitutes evidence, fruits, and instrumentalities of violations of Title 21, United States Code, Sections 952, 960, 963, 841 and 846.

24. I also believe that probable cause exists to believe that evidence, fruits and instrumentalities of illegal activity committed by SANCHEZ continues to exist on the Target Telephones.

25. Therefore, I respectfully request that the Court issue a warrant authorizing me, a Special Agent with Homeland Security Investigations, or another federal law enforcement agent specially trained in digital evidence recovery, to search the items described in Attachment A-1 and Attachment A-2, and seize the items listed in Attachment B.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
Roberto Rospigliosi
Special Agent
Homeland Security Investigations

Subscribed and sworn to before me this 3rd day of July, 2017.

_____
The Honorable Peter C. Lewis
United States Magistrate Judge

13